———

(Cuyahoga County Common Pleas.)
December 17, 1900.
A. EDIS v. R. A. BUTLER, Superintendent of the Cleveland Workhouse.

———

(1). By the Dow law, sec. 4364-20, R. S., druggists and other persons selling liquor for mechanical, pharmaceutical and sacramental purposes are left free to sell intoxicating liquors so long as they do not violate any other statute dealing upon that subject.
(2). By the latter part of section 11 of the Dow Law, it was intended to give to municipalities the power to control absolutely, in all respects, the sale of liquor and the places where the same is sold, even to the extent of total prohibition of the same.
(3). It seems to be a well-settled proposition in law to-day, well supported by the courts, that when a municipal corporation follows the direct authority given in a statute for the passage of an ordinance, that it is not necessary to include all the exceptions in other statutes relating to the same subject-matter.
(4). An ordinance prohibiting the sale of intoxicating liquor on Sunday is valid although it fails to make the exceptions provided for by the Dow Law in regard to drug-stores, etc.
(5). Sec. 2701-e-1 requiring that a full transcript of the proceedings in the case shall accompany the mittimus where a person is confined to the workhouse, applies to district workhouses, erected and maintained by different counties for such districts, but does not apply to the workhouse of Cuyahoga county, for the reason that there is distinct legislation for its control and for the control of prisoners sent to it from the magistrate of Cuyahoga county.

———

FORD, J.

This is an action in habeas corpus, brought by A. Edis against R. A. Butler, the superintendent of the Cleveland workhouse, charging in his petition, that he is unlawfully detained by the said superintendent; that the ordinance upon which the affidavit was issued, is absolutely void and unconstitutional and against the laws of the state of Ohio; that the affidavit upon which the warrant was issued, is void because it charges no offense against the laws of the state of Ohio; and that the mittimus is insufficient.

The return of the defendant states that he received the said Edis into his charge and custody from the hands of the marshall of the village of Collinwood by virtue of a sentence and commitment of the mayor of said village.

The mittimus sets forth that the relator was convicted of the violation of the village ordinance against keeping open a place where intoxicating liquors are sold at retail on Sunday.

The ordinance under which the conviction was had, is as follows:

"It shall be unlawful for any person or persons, the owner or owners, keeper or keepers, agent or agents, of any saloon, ale, beer or porter house or other place within the limits of the village of Collinwood, where intoxicating liquors are sold at retail for any purpose or in any quantity, otherwise than upon the prescription issued in good faith by a physician in active practice, or for exclusively known mechanical, pharmaceutical or sacramental purposes, to cause, permit or allow such saloon, ale, beer or porter house or other place, to be or remain open on the first pay of the week, commonly called Sunday.

"The provisions of this ordinance shall not apply to, or, in any way affect the manufacture of intoxicating liquors from the raw material, or the sale thereof at the manufactory by the manufacturer of the same in quantities of one gallon or more at one time."

The relator is detained by virtue of the judgment of a court possessing jurisdiction of offenses of the kind charged. Unless the statute or ordinance under which the relator was convicted, is unconstitutional or void for some reason, and the conviction thereunder for that reason void, the relator is not entitled to be discharged upon a petition in habeas corpus.

The ordinance is authorized by section 4364-20 of the Revised Statutes of Ohio, which is section 11 of the Dow law so called, and is as follows:

"That the sale of intoxicating liquors, whether distilled, malt or vinous, on the first day of the week, commonly called Sunday, except by a regular druggist on the written prescription of a regular practicing physician for medical purposes only, is hereby declared to be unlawful, and all places where such intoxicating liquors are on other days sold or exposed for sale, except regular drug stores, shall on that day be closed, and whoever makes any such sale, or allows any such place to be open or remain open on that day. shall be fined in any sum not exceeding one hundred dollars, and not less than twenty-five dollars, and be imprisoned in the county jail or city prison not less than ten days and not exceeding thirty days. In regular hotels and eating houses, the word 'place' herein used shall be held to mean the room or part of room where such liquors are usually sold or exposed for sale, and the keeping of such room or part of room securely closed shall be held, as to such hotels and eating houses, as a closing of the place within the meaning of this act. And any municipal corporation shall have full power to regulate, restrain and prohibit ale, beer and porter houses, and other places where intoxicating liquors are sold at retail for any purpose or in any quantity other than is provided for in section 8 of this act, as amended March 21, 1887. But if any municipal corporation shall prohibit ale, beer and porter houses, or other places where intoxicating liquors are sold within the limits of such corporation, a ratable proportion of the tax paid by the proprietors thereof for the unexpired portion of the year shall be returned to such proprietors."

Section 4364-16 Rev. Stat., which is section 8 of the Dow law, reads as follows:

"The phrase 'trafficking in intoxicating liquors,' as used in this act, means the buying or procuring and selling of intoxicating liquors otherwise than upon prescription issued in good faith by reputable physicians in active practice, or for exclusively known mechanical, pharmaceutical or sacramental purposes; but such phrase does not include the manufacture of intoxicating liquors from the raw material, and the sale thereof at the manufactory, by the manufacturer of the same in quantities of one gallon or more at any one time."

From the reading of the former part of section 4364-20, it is apparent that the legislature felt that the good order and good morals of the community required that some restraint should be put upon the sale of liquors and the keeping open of the places of such sale upon the first day of the week, commonly called Sunday; and to that end, the first portion of the said section was passed, providing against the sale and against the keeping open of places on Sunday and broadly excepting from the operation of the statute drug-stores and druggists.

From the passage of the latter part of that section. it is apparent that the legislature felt that while the former part of this section applied to the conditions generally throughout the state, that there were communities or municipalities that in the exercise of their local government might desire a different condition and might desire a more sweeping legislation in regard to the conduct of saloons and the sale of liquors, and, to that end provided that such places might, by ordinance, be regulated, restrained, or totally prohibited.

For the purpose of showing the au-

thority under which the ordinance in question was passed, this latter part of section 11 of the Dow law and section 8 of the Dow law may be re-constructed to read as follows:

"Any municipal corporation shall have full power to keep closed on the first day of the week, commonly called Sunday, all ale, beer and porter houses, and other places, including drug-stores and where intoxicating liquors are sold at retail for any purpose or in any quantity other than places where intoxicating liquors are sold upon prescription issued in good faith by reputable physicians in active pratice, or places where intoxicating liquors are sold for exlcusively known mechanical, pharmaceutical or sacramental purposes, and places where intoxicating liquors are manufactured from the raw material."

It would seem that it was the intention of the legislature, by the latter part of this section, to give to municipalities and the amplest power to control the sale of liquors and the places where the same are sold, irrespective of the purpose for which it was sold, or the quantity in which it was sold, or the persons by whom it was sold, whether druggists or otherwise, except in so far as the druggist or other person might be relieved by the phraseology in section 8, which reads:

"Otherwise than upon prescription issued in good faith by reputable physicians in active practice, or for exclusively known mechanical, pharmaceutical or sacramental purposes."

And, from this language, giving to it the ordinary and reasonable meaning, it must be conceded that it was the intention of the legislature that this phraseology would leave druggists and other persons selling liquor for mechanical and other similar purposes, free to sell intoxicating liquors so long as they did not vilolate any other statute dealing upon that subject. And it is far to conclude, perhaps, that, under this ordinance, the municipality would have power to close drug-stores for selling intoxicating liquors in any other way than in the manner and form prescribed by the statute.

It is contended by counsel for the relator, that this ordinance is broader than the statute; and that regular druggists and drug-stores are therein specifically excepted; but we think the latter part of this section is intended to give to municipalities a very much larger control over the sale of liquors and the places wherein the same are sold, than the state law.

In short, it is intended to give to municipalities the power to control absolutely, in all respects, the sale of liquor and the places where the same is sold, even to the extent of total prohibition of the same.

It may be contended that if a Sunday-closing ordinance is to be passed, the most that the municipality could do, would be to practically re-enact the state law on that subject, and, in which case, there should be an exception, in the ordinance, of regular druggists and regular drug-stores; but this point has been repeatedly decided by the circuit courts and the supreme court, holding that municipalities do have the power under the latter part of this section, to pass the Sunday-closing law, with the power to make the penalty greatly in excess of that provided under the state law, and, even going so far in 53 Ohio. St., 433, in the case of the State v. Cope, as to hold that a person might be arrested and convicted, both under the state law and the ordinance, for the commission of a single act constituting the offence. Drug-stores may run their places of business on week days and Sundays only as they sell in accordance with section 8 of the Dow law, heretofore referred to; if they sell otherwise, then they must be subject to the Dow tax, and subject to the same regulations as saloons.

The cases cited by the relator, to support his contention that the ordinance is invalid because it does not except drug-stores, do not seem to meet the conditions of this case. In none of the cases cited, did the ordinances which were held to be invalid, follow the authority of the statute.

It seems to be a well-settled proposition in law today, well supported by the courts, that when a municipal corporation follows the direct authority given in the statutes for the passage of an ordinance, that it is not necessary to include all the exceptions in other statutes relating to the same subject-matter.

The affidavit in this case follows in detail the ordinance under which it was drawn, and seems to the court to be free from the defects contended for by the counsel for the relator.

It is contended further, that the mittimus by which the prisoner is held in this place, is defective for the reason that it does not set forth fully the transcript from the mayor's docket; and counsel cited section 2701-e-1 of the Revised Statutes of Ohio. The court is of the opinion that this section plainly applies to district workhouses erected by county commissioners of different counties and maintained as district workhouses, and that these provisions do not apply to this case, for the reason that there is a workhouse in Cuyahoga county, and there is special and distinct legislation for its control and of the control of prisoners sent to it from magistrates within the county.

Counsel also cites section 6801-a-b-c, Revised Statutes, but, on examination,

the court is convinced that this body of law applies to workhouses wherein the prisoners are sent to them from other counties than those in which the workhouses exist, or to district workhouses from another county than that in which the workhouse exists.

Under both sections cited, a transcript of the docket of the magistrate is required to accompany the mittimus. Section 2099 of the Revised Statutes reads as follows:

"When a person over sixteen years of age is convicted of an offense, under the law of the state or an ordinance of a municipal corporation, and the tribunal before which the conviction is had, is directed by law to commit the offender to the county jail or corporation prison, the court, mayor, or justice of the peace, as the case may be, shall sentence the offender to the workhouse, if there is such a house in the county; provided that when a commitment is made from a city, village, or township in the county, other than in the municipality containing such workhouse, the council of such city or village, or the trustees of such township, shall transmit with the mittimus a sum of money equal to forty cents per day for the time of such commitment, to be placed in the hands of the superintendent of such workhouse, for the care and maintenance of such prisoner."

It is, we think, clear that this is the section under which the mayor of Collinwood committed the prisoner in this case. And it was held in 51 Ohio St., 228, that a defendant convicted in Cuyahoga county under the Sunday closing law, should be sentenced to the Cleveland workhouse, and not to the county jail, as provided for in section 2099.

There is nothing in this statute, nor in the body of the law connected therewith, requiring the mayor to send a transcript of the case with the mittimus.

It is reasonable to suppose that the legislature, under the two former statutes mentioned, sec. 6801-a and sec. 2701-e-1, providing for the imprisonment of persons coming from other counties and sometimes from a great distance, required that a full transcript of the docket of the magistrate committing, should accompany the mittimus; but that, under section 2099, where the persons committed are from the courts and magistrates within the county and the record of the proceedings is convenient of access and readily available, the legislature apparently for that reason did not require to be sent with the mittimus a transcript of the magistrate's docket.

For these reasons the court is of the opinion that the mayor acted in full conformity with the statutes in committing the prisoner, and that the commitment is sufficiently full and explicit, setting out, as it does, that the prisoner was arrested upon a complaint in writing, duly sworn to, for the violation of the village ordinance against keeping open a place wherein intoxicating liquors are sold at retail on Sunday, in the village of Collinwood, county of Cuyahoga; brought before the said mayor, pleaded not guilty, was tried and found guilty, sentenced and required to pay the fine of $50 and costs and stand committed in the workhouse in the city of Cleveland till discharged by due process of law.

Section 5741, Rev. Stat., provides that a judge may disregard matters of form or technicalities in any mittimus or order of commitment by a court or officer authorized to commit by law.

The court, for these reasons, is of the opinion, that the writ should not be allowed, and it is, therefore, denied, and the prisoner is remanded to the custody of the defendant, the superintendent of the Cleveland workhouse.